Paul T. Fortino, OSB No. 832010
PFortino@perkinscoie.com
Douglas R. Pahl, OSB No. 950476 (ECF attorney)
DPahl@perkinscoie.com
Cody M. Weston, OSB No. 984290
CWeston@perkinscoie.com
PERKINS COIE LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Telephone:  503.727.2000
Facsimile:  503.727.2222

Attorneys for Cascade Grain Products, LLC

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re | |
| CASCADE GRAIN PRODUCTS, LLC, | NO. 09-30508-elp11 |
| Debtor. | |
| CASCADE GRAIN PRODUCTS, LLC, an Oregon limited liability company, | |
| Plaintiff, | ADV. PROC. NO. 09-03140-elp |
| v. | **COMPLAINT FOR DAMAGES (BREACH OF CONTRACT AND ACTION ON GUARANTY)** |
| ECO-ENERGY, INC., a Tennessee corporation; FC STONE, LLC, an Iowa limited liability company, | |
| Defendants. | |

Plaintiff, Cascade Grain Products, LLC ("Cascade"), as Debtor and Debtor in Possession, alleges:

**Perkins Coie LLP**
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

58140-0005/LEGAL15933236.1

**PARTIES, JURISDICTION, AND VENUE**

1.       Cascade is an Oregon limited liability company headquartered in Vancouver, Washington.  Cascade owns and operates an ethanol plant in Clatskanie, Oregon.

2.       On January 28, 2009, Cascade commenced this reorganization case by filing a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.  Cascade continues to manage its properties and affairs as debtor in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

3.       Defendant, Eco-Energy, Inc. ("Eco"), is a Tennessee corporation with its principal place of business in Franklin, Tennessee.

4.       Defendant, FC Stone, LLC ("FC Stone"), is, upon information and belief, an Iowa limited liability company with its principal place of business in Des Moines, Iowa.

5.       This Court has jurisdiction over these proceedings pursuant to 28 U.S.C. §§ 157 and 1334.  This action is a core proceeding pursuant to 28 U.S.C. § 157(b).  This action may also be heard as a non-core proceeding pursuant to 28 U.S.C. § 157(c).  If the Court considers this a non-core action, Cascade consents to entry of final orders and judgment by this Court.

6.       Venue is proper in this District pursuant to 28 U.S.C. § 1409.

**FIRST CLAIM FOR RELIEF**

**(Breach of Contract Against Eco)**

7.       Cascade incorporates the paragraphs above as if fully alleged herein.

8.       On May 19, 2006, Cascade and Eco entered into a certain Ethanol Marketing Contract ("Marketing Agreement") whereby Eco agreed to purchase the entire ethanol output of Cascade's Clatskanie plant facility for an initial term of three years.  A copy of the Marketing Agreement is attached hereto as Exhibit 1.

9.       Each subsequent sale of ethanol pursuant to the Marketing Agreement was governed by a separate contract between Cascade and Eco that contained specified terms,

PAGE  2-    COMPLAINT FOR DAMAGES

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

58140-0005/LEGAL15933236.1

1  including quantity, price, delivery dates, and other terms.  The Marketing Agreement provisions

2  governed such sale to the extent not superseded by the terms of the subsequent separate contract.

3      10.    On August 28, 2008, Cascade and Eco entered into such a separate contract,

4  contract number CASP082808-2, for Cascade to sell and deliver a certain quantity of ethanol to

5  Eco in multiple shipments over a several-month period (the "Contract").  The Contract was

6  amended on December 1, 2008.  A copy of the Contract, as amended, is attached hereto as

7  Exhibit 2.

8      11.    In the Contract, among other various terms, Eco agreed to timely pay Cascade for

9  the ethanol shipments using a price derived from a formula specified in the Contract.

10      12.    Cascade performed all of its material obligations under the Contract.

11      13.    Eco has resold to one of its customers the ethanol it received under the Contract

12  and Eco has been paid by such customer.

13      14.    Despite demand, Eco has breached the Contract by failing to pay Cascade

14  $2,743,784.70, less allowed deductions in respect of the Contract, for ethanol that Cascade

15  delivered to Eco pursuant to the terms of the Contract.  Cascade is entitled to damages in this

16  amount, plus pre- and post-judgment interest at the Oregon statutory rate of 9% per annum.

17                  **SECOND CLAIM FOR RELIEF**

18                  **(Action on Guaranty Against FC Stone)**

19      15.    Cascade incorporates the paragraphs above as if fully alleged herein.

20      16.    By and through a guaranty included as an attachment to the Marketing Agreement

21  (the "Guaranty"), defendant FC Stone agreed to "unconditionally and irrevocably guarantee" to

22  Cascade the performance by Eco of all of Eco's payment and other obligations pursuant to sale

23  contracts executed under the Marketing Agreement.  FC Stone is, therefore, responsible for each

24  and every of Eco's obligations under the Contract.

25      17.    Cascade has performed all of its material obligations under the Contract.

26

PAGE  **3-**    COMPLAINT FOR DAMAGES

58140-0005/LEGAL15933236.1

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

1    18.    FC Stone has failed to satisfy Eco's obligations under the Contract and FC Stone's

2    obligations under the Guaranty.

3    19.    Cascade is entitled to damages in the amount of $2,743,784.70, less allowed

4    deductions in respect of the Contract, for ethanol that Cascade delivered to Eco under the

5    Contract, plus pre- and post-judgment interest at the Oregon statutory rate of 9% per annum.

6                              **PRAYER FOR RELIEF**

7        WHEREFORE, Cascade prays for judgment against Eco and FC Stone, jointly and

8    severally, as follows:

9        A.    For damages in the amount of $2,743,784.70, less allowed deductions in respect

10    of the Contract;

11        B.    For pre-and post-judgment interest on said amount at the rate of 9% per annum;

12        C.    For reasonable expenses, costs, and disbursements incurred herein; and

13        D.    For such other relief the Court deems just and proper.

14    DATED:  April 23, 2009                    **PERKINS COIE** LLP

15

16                                    By: /s/ Douglas R. Pahl
                                         Paul T. Fortino, OSB No. 832010
                                         PFortino@perkinscoie.com
17                                       Douglas R. Pahl, OSB No. 950476
                                         DPahl@perkinscoie.com
18                                       Cody M. Weston, OSB No. 984290
                                         CWeston@perkinscoie.com
19                                    1120 N.W. Couch Street, Tenth Floor
                                      Portland, OR  97209-4128
20                                    Telephone:  503.727.2000
                                      Facsimile:  503.727.2222
21
                                      Attorneys for Cascade Grain Products, LLC
22

23

24

25

26

**Perkins Coie** LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR  97209-4128
Phone:  503.727.2000
Fax:  503.727.2222

58140-0005/LEGAL15933236.1

# ETHANOL MARKETING CONTRACT

THIS AGREEMENT (hereinafter "Agreement") is entered into by and among Eco-Energy, Inc. (hereinafter "Eco") a Tennessee corporation with its main office located at 730 Cool Springs Blvd, Suite 130, Franklin, Tennessee 37067, and Cascade Grain Products, LLC (hereafter "CASCADE GRAIN") an Oregon limited liability company with its main office located at 414 NW 214th Circle, Ridgefield, Washington 98642-5629.

## RECITALS:

A.    CASCADE GRAIN, is developing an ethanol plant facility (the "Facility") with a nameplate capacity of approximately 113 million gallons per year of denatured ethanol to be located in Clatskanie, Oregon and desires to establish an output-marketing contract.

B.    Eco is a reseller in ethanol and is experienced in the marketing and transportation of such ethanol, and is willing to agree to purchase the entire ethanol output of the Facility.

## NOW, THEREFORE, IT IS AGREED AS FOLLOWS BETWEEN THE PARTIES:

1.    **Eco Services**. Eco shall, during the term hereof, purchase the Facility's entire output of ethanol and provide certain transportation services to CASCADE GRAIN (the "Eco Program"). The Eco services to be provided are set forth in Sections 2 and 3 and the exhibits attached hereto which are referred to therein.

2.    **Eco Take or Pay Ethanol Purchases**. CASCADE GRAIN agrees to sell to Eco, and Eco agrees to purchase from CASCADE GRAIN 100% of the ethanol produced by the Facility during the term of this Agreement. Each potential Eco purchase shall either be a fixed price order as described in Section 6(a) below or a posted price order as set forth in Section 6(b) below and shall be presented by Eco to the CASCADE GRAIN Representative, described in Section 5 below, for approval. Upon such approval and purchase, Eco shall submit to CASCADE GRAIN (i) a confirmation of the purchase contract encompassing the details of each purchase and (ii) a FPPO or PPPO (as defined in Section 6 below), as the case may be, relating to such purchase for execution by the parties. The terms of such FPPO or PPPO, as the case may be, shall be consistent with the provisions of Exhibit A.

3.    **Eco Transportation Services**. Eco agrees to provide the transportation services set forth in Exhibit B.

4.    **Fees**. CASCADE GRAIN shall pay a fee for services of Eco and materials provided hereunder of S.01 Net Gallons of ethanol purchased by Eco during the term. Such fees shall be payable monthly on an estimated basis on the first business day of each month during the term hereof, in advance to Eco. The initial estimated monthly payment shall be $94,166.66 dollars per month. The actual fees payable based upon actual net gallons purchased and the above quoted rate shall be computed every three (3) months and additional payment to Eco or credits to CASCADE GRAIN's account shall be made, and the monthly fee adjusted, so as to accurately reflect the actual fees payable.

5.    **CASCADE GRAIN Representative**. CASCADE GRAIN shall designate, in writing, one or more persons who shall be authorized and directed to receive services hereunder and to make all merchandising, purchasing and sales decisions for CASCADE GRAIN, (hereinafter the

1

#0504 P.003/015

"Cascade Grain Representative"). All directions, transactions and authorizations given by such representative to Eco shall be binding upon CASCADE GRAIN. Eco shall be entitled to rely on the authorization of such persons until it receives written notification from CASCADE GRAIN that such authorization has been revoked.

6.    **Purchase Orders From Eco-Energy**.

   (a)    **Fixed Price Orders**. From time to time and consistent with the anticipated total ethanol production of the Facility, Eco shall offer to buy ethanol at prices, in volumes and on delivery dates agreed with Cascade Grain pursuant to a purchase order, substantially in the form attached hereto as Exhibit C (each a "FPPO"). If such offer is acceptable to Cascade Grain, Cascade Grain shall countersign such FPPO and deliver a copy of the same to Eco within one Business Day (or such other period of time as the Parties agree).

   (b)    **Posted Price Orders**. From time to time and consistent with the anticipated total ethanol production of the Facility, Eco shall solicit Cascade Grain to offer to sell ethanol at posted prices pursuant to a purchase order substantially in the form attached hereto as Exhibit D (each a "PPPO"). Cascade Grain shall respond to such solicitation by stating whether or not it is willing to offer to sell ethanol at the price or prices proposed by Eco for such sales, and if Cascade Grain is willing to make such offer, it shall countersign Part 1 of such solicitation. Any offer made by Cascade Grain pursuant to the preceding sentence shall bind Cascade Grain until noon pacific standard time on the following Business Day (or until such other time period as the Parties agree). Eco shall promptly notify Cascade Grain upon Eco's agreeing to sell ethanol which is the subject of an offer made pursuant to this Section 6(b) by specifying the balance of information in substantially the form of Part 2 of such offer, whereupon Cascade Grain shall (i) promptly countersign Part 2 of such offer and (ii) become bound to sell ethanol on the terms stated in such offer, provided such terms are consistent with the offer made by Cascade Grain and this Agreement. Eco shall notify Cascade Grain no later than noon pacific standard time (or such other time as Eco and Cascade Grain agree) on the day Cascade Grain's offer made under this Section 6(b) expires that no sales of ethanol with respect to such offer have been made if no such sales have been made. The fact than no sales have been made shall not relieve Eco of its obligation to purchase 100% of the Facility's output pursuant to Section 2 hereof.

7.    **Swaps and Exchanges; Quarterly Reports**    From time to time, Eco may enter into a swap transaction (a "*Value Added Transaction*") with a person (a "*Swap Party*") pursuant to which Eco delivers to that person ethanol that Eco expected, when it entered into the Cascade Grain FPPO or PPPO therefor, to deliver to another person, and as a consequence, Eco is able to realize an increased profit or lower realized freight cost, as compared to the freight cost and profit margin that would have otherwise been incurred or realized, respectively, on such sale if such Value Added Transaction had not been entered into (a "*Net Positive Differential*"). Eco shall pay CASCADE GRAIN an amount equal to fifty percent (50%) of the Net Positive Differential associated with each Value Added Transaction. Such payments shall be made by Eco quarterly, within 30 days of the close of each calendar quarter regardless of whether the Value Added Transaction has settled between Eco and the Swap Party on the date that payment is due

2



#0904 P.004/015

hereunder. With respect to each calendar quarter, Eco shall submit to CASCADE GRAIN a quarterly report for such quarter which shall describe each Value Added Transaction and include the amount of the aggregate Net Positive Differential created in such quarter pursuant to all Value Added Transactions.

8.  **Eco Limitations**.

   (a)   In the event that CASCADE GRAIN shall fail to deliver ethanol that it has agreed to deliver to Eco and which Eco has agreed to sell to a third party, Eco shall be responsible for obtaining replacement ethanol from other ethanol suppliers at market prices. CASCADE GRAIN shall pay Eco all costs and expenses incurred by Eco in fulfilling its obligations pursuant to the immediately preceding sentence.

   (b)   If any party terminates this agreement for any reason, both parties will be responsible to complete any existing contracts.

9.  **Separability**. The services, contracts and relationships between CASCADE GRAIN and Eco are independent and separable.

10. **Confidentiality Agreement**. The parties agree, to the extent permitted by law, to preserve and protect the confidentiality of the Agreement. Both parties recognize that federal or state law may require the filing of the Agreement with, or the furnishing of information to, governmental authorities or regulatory agencies. Both parties further recognize the need, from time to time, for the submission of the Agreement to lenders, affiliates, consultants, or contractors performing work on, or related to, the subject matter of the Agreement. Buyer and Seller agree to allow the submission of the Agreement to (i) lenders and (ii) affiliates, consultants, or contractors if such affiliates, consultants, or contractors agree to protect the confidentiality of the Agreement. In the event either party is of the opinion that applicable law requires it to file the Agreement with, or to disclose information related to the Agreement (other than information required by laws and regulations in effect as of the date hereof to be furnished in periodic reports to governmental authorities) to, any judicial body, governmental authority or regulatory agency, that party shall so notify the other party in writing prior to the disclosure or filing of the Agreement.

11. **Solicitation**. CASCADE GRAIN agrees not to contact or interfere with, solicit, disrupt or attempt to disrupt relationships, contractual or otherwise, between Eco and any of its customers, employees or vendors.

12. **Public Disclosure**. Any public announcements concerning the transaction contemplated by this letter shall be approved in advance by Eco and CASCADE GRAIN, except for disclosures required by law, in which case the disclosing party shall provide a copy of the disclosure to the other party prior to its public release.

 

3

#0504 P.005/015

13. **Terms and Termination**.

    (a)    The initial term of this Agreement shall commence on the first day of ethanol production and shall continue for a term of three (3) years. This contract will automatically renew for an additional term of two (2) years unless CASCADE GRAIN gives written notice at least four (4) months prior to the end of the initial term.

    (b)    This Agreement may be terminated by CASCADE GRAIN as to Eco in the event of material breach of any of the material terms hereof by Eco, by written notice specifying the breach, which notice shall be effective fifteen (15) days after it is given unless the receiving party cures the breach within such time. This Agreement may be terminated by Eco as to CASCADE GRAIN in the event of material breach of any of the material terms hereof by CASCADE GRAIN, by written notice specifying the breach, which notice shall be effective fifteen (15) days after it is given unless the receiving party cures the breach within such time.

    (c)    This Agreement may also be terminated between either party by the mutual consent of both parties on such terms as the parties may agree.

    (d)    In addition to any other method of terminating this Agreement, either party may unilaterally terminate this Agreement at any time if such termination shall be required by any regulatory authority, and such termination shall be effective on the 30th day following the giving of notice of intent to terminate.

14. **Licenses, Bonds, and Insurance**. Each party represents that it now has and will maintain in full force and effect during the term of this Agreement, at its sole cost, all necessary state and federal licenses, bonds and insurance in accordance with applicable state or federal laws and regulations. CASCADE GRAIN agrees to maintain throughout every term of this Agreement commercial general liability insurance with combined single limits of not less than $2,000,000.00. Eco agrees to maintain throughout every term of this Agreement commercial general liability insurance, with combined single limits of not less than $2,000,000.00. Each party's policies of commercial general liability insurance shall be endorsed to require at least thirty (30) days advance notice to the other prior to the effective date of any termination or cancellation of coverage. Each party shall cause the other to be named as an additional insured on the other's insurance policy, and the coverage maintained by the other party by the start of the commencement date of production in accordance with this Agreement, and each party shall update the certificate of insurance as necessary during the term of this Agreement.

15. **Limitation of Liability**. **EACH PARTY UNDERSTANDS THAT NO OTHER PARTY MAKES ANY GUARANTEE, EXPRESS OR IMPLIED, TO ANY OTHER OF PROFIT, OR OF ANY PARTICULAR ECONOMIC RESULTS FROM TRANSACTIONS HEREUNDER. IN NO EVENT SHALL ANY PARTY BE LIABLE FOR SPECIAL, COLLATERAL, INCIDENTAL, OR CONSEQUENTIAL DAMAGES FOR ANY ACT OR OMISSION COMING WITHIN THE SCOPE OF THIS AGREEMENT, OR FOR BREACH OF ANY OF THE PROVISIONS OF THIS AGREEMENT, EVEN IF IT HAS**



4

#0504 P.006/015

**BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. SUCH EXCLUDED DAMAGES INCLUDE, BUT ARE NOT LIMITED TO, LOSS OF GOOD WILL, LOSS OF PROFITS, LOSS OF USE AND INTERRUPTION OF BUSINESS.**

16.  **Disclaimer.** CASCADE GRAIN understands and agrees that Eco makes no warranty as to legal or regulatory requirements and risks, except that Eco will, at all times, comply with the requirements of Section 19 hereof. CASCADE GRAIN shall obtain such legal and regulatory advice from third parties as it may deem necessary respecting the applicability of legal and regulatory requirements applicable to CASCADE GRAIN's business.

17.  **Indemnity.** The Parties agree that they shall absolve, release and refrain from seeking remedies against each other and their officers, agents, employees, subcontractors and insurers for any and all losses, claims, damages, costs, suits and liabilities for damage, deterioration of quality, shrinkage in quantity, loss of grade or loss of ethanol resulting from the inherent nature of transfer operations and the inherent nature of ethanol provided that this in no way shall relieve the parties for their own negligence, willful misconduct or theft. Each party to this contract shall indemnify, defend and hold the other harmless from claims, demands and causes of action asserted against the other by any person (including without limitation employees of either party) for personal injury or death, or for loss of or damage to property resulting from the willful or negligent acts or omissions of the indemnifying party. Where personal injury, death or loss of or damage to property is the result of the joint negligence or misconduct or the Parties hereto, the Parties expressly agree to indemnify each other in proportion to their respective share of such joint negligence or misconduct.

18.  **Nature of Relationship.** Eco is an independent contractor providing services to CASCADE GRAIN. No employment relationship, partnership or joint venture is intended, nor shall any such relationship be deemed created hereby. Each party shall be solely and exclusively responsible for its own expenses and costs of performance.

19.  **Notices.** Any notices permitted or required hereunder shall be in writing, signed by an officer duly authorized of the party giving such notice, and shall either be hand delivered or mailed. If mailed, notice shall be sent by certified, first class, return receipt requested, mail to the address shown above, or any other address subsequently specified by notice from one party to the other.

20.  **Compliance With Governmental Controls.** To the extent applicable, the parties agree to comply with all laws, ordinances, rules, codes, regulations and lawful orders of any federal, state or local government authority applicable to the performance of the Agreement, including, without limitation, those pertaining to the environment, safety, health, social security, old age pension, wage hour laws, unemployment compensation, non-discrimination on the basis of race, religion, color, sex or national origin and affirmative action.

21.  **New Or Changed Regulations.** The parties enter the Agreement in reliance upon the laws, rules, regulations, interpretations, decrees, agreements, and concessions of, and arrangements (hereafter called "Regulations") with governments or governmental instrumentalities in effect on the date of the Agreement with respect to or directly or indirectly affecting the ethanol to be delivered, including without limitation, production, gathering, manufacturing,

5

transportation, sale and delivery thereof insofar as said Regulations affect Eco and their customers. In the event that at any time subsequent to the date of the Agreement, any of said Regulations are changed or new Regulations are promulgated whether by law, decree, interpretation or regulation, or by response to the insistence or request of any governmental authority or person purporting to act therefore, and the effect of such changed or new Regulation (a) is or will not be covered by any other provisions of the Agreement, or (b) has or will have an adverse economic effect upon the parties to this Agreement or the suppliers or customers of said parties, the parties shall have the option to request renegotiation of the prices and other pertinent terms provided for in the Agreement and their respective effective dates. Said option may be exercised by Eco at any time after such changed or new Regulation is promulgated by giving notice of the exercise of its option to renegotiate prior to the time of delivery of ethanol or any part thereof. Such notice shall contain the new prices and terms desired by agreement of Eco and CASCADE GRAIN. If the parties do not agree upon new prices and terms satisfactory to both parties within thirty (30) days after such notice is given, Eco shall have the right to terminate the Agreement at the end of said thirty (30) day period.

22.   **General**.

(a)   This agreement is the entire understanding of the parties concerning the subject matter hereof, and it may be modified only in writing signed by the parties.

(b)   If any provision or provisions of this agreement shall be held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall not in any way be affected or impaired thereby.

(c)   No party shall be liable for any failure to perform any or all of the provisions of this Agreement to the extent that performance has been delayed or prevented by a Force Majeure Event. A "Force Majeure Event" shall mean any earthquake, fire, flood, hurricane, storm, tornado or other act of God, war (declared or not), terrorism, hostilities, blockade, revolution, strikes of a regional or national nature that affect the plant, insurrection or riot that prevents the affected party from performing its obligations (other than the payment of money) under this Agreement.

(d)   This Agreement is not intended to, and does not, create or give rise to any fiduciary duty on the part of any party to any other.

(e)   No action, regardless of its nature or form, arising from or in relation to this Agreement may be brought by either party more than two (2) years after the cause of action has arisen, or, in the case of an action for nonpayment, more than two (2) years from the date the last payment was due. Venue for any action arising from or in relation to this agreement shall be in Columbia County, Oregon.

(f)   This agreement is governed by and shall be construed under the laws of the State of Oregon.

6.

(g)   This agreement shall be binding upon and inure to the benefit of the parties and the successors and assigns of the entire business and goodwill of Eco or CASCADE GRAIN, and may be collaterally assigned to Cascade Grain's lenders or the agents thereof, but shall not be otherwise assignable without the express consent of both parties to this contract upon the sale, merger or any acquisition of either company. Eco agrees that upon written notice that Cascade Grain has assigned its rights under this Agreement to the agent of Cascade Grain's lenders ("Lender's Agent") as security for its obligations to such lenders, Eco shall deliver to Lender's Agent all notices given under this Agreement to Cascade Grain at the same time and in the same manner as given to Cascade Grain; and Lender's Agent shall be entitled to exercise rights and to cure any defaults of Cascade Grain under this Agreement and Eco shall accept such exercise or cure as though it had been done by Cascade Grain.

(h)   This agreement shall be binding upon CASCADE GRAIN and its ethanol plant and Eco in the event that the name of either party hereto is later changed to any name in the alternative. A change in name does not void, nor make this contract voidable.

DATED AND EXECUTED AS OF THIS 19 th DAY OF MAY ____, 2006

Cascade Grain Products, LLC

BY: _____

Eco-Energy Inc.

BY: _____ PRESIDENT

7

MAY. 19. 2005  2:23PM    FC STONE COMMERCIAL                    NO. 743    P. 1

MAY.19 2005 14:01 61577828972

$6500 P.001/004

# ETHANOL MARKETING CONTRACT
# GUARANTY

1.    **Guaranty.** FC Stone, LLC ("Guarantor") in recognition of the valuable working relationship that it has established with Eco-Energy, Inc. ("Eco"), in connection with the ethanol facility to be constructed in Clatskanie, Oregon by Cascade Grain Products, LLC ("Cascade Grain"), and in order to induce Cascade Grain to enter into the foregoing Ethanol Marketing Contract with Eco, hereby unconditionally and irrevocably guarantees to Cascade Grain the timely performance by Eco, of all of its payments and other obligations to Cascade Grain under the terms of the foregoing Ethanol Marketing Contract. This Guaranty cannot be amended, modified, revoked or terminated without the prior written consent of Cascade Grain and shall be governed by and shall be construed under the laws of the State of Oregon.

2.    **Waivers.**      Guarantor waives:

(i)      Any right it may have to require Cascade Grain to proceed against Eco, proceed against or exhaust any security held from Eco, or pursue any other remedy in Cascade Grain's power to pursue;

(ii)      Any defense based on any legal disability of Eco, any discharge or limitation of the liability of Eco to Cascade Grain, whether consensual or arising by operation of law or any bankruptcy, reorganization, receivership, insolvency, or debtor-relief proceeding, or from any other cause, or any claim that Guarantor's obligations exceed or are more burdensome than those of Eco;

(iii)      All presentments, demands for performance, notices of nonperformance, protests, notices of protest, notices of dishonor, notices of acceptance of this and of the existence, creation, or incurring of new or additional indebtedness of Eco, and demands and notices of every kind;

(iv)      Any defense based on or arising out of any defense that Eco may have to the payment or performance of the foregoing Ethanol Marketing Contract or any part of it; and

(v)      All rights of subrogation, reimbursement, indemnification and contribution (contractual, statutory or otherwise), including any claim or right of subrogation under the Bankruptcy Code (Title 11 of the U.S. Code) or any successor statute, all rights to enforce any remedy that Cascade Grain may have against Eco, and all rights to participate in any security now or later to be held by Cascade Grain for the foregoing Ethanol Marketing Contract.



PDX -4216 (2) 1 \89799-1

MAY. 19. 2006  2:23PM    FC STONE COMMERCIAL                    #6509 P.010/015
                                                              NO. 749    P. 2

MAY.19.2006 14:02 61577828972
                                                              #6500 P.002/004

3.  **Financial Condition.**  Guarantor assumes full responsibility for keeping informed
    of Eco's financial condition and business operations and all other circumstances
    affecting Eco's ability to pay and perform its obligations to Cascade Grain, and
    agrees that Cascade Grain shall have no duty to disclose to Guarantor any
    information which Cascade Grain may receive about Eco's financial condition,
    business operations, or any other circumstances bearing on its ability to perform.

    IN WITNESS WHEREOF, FC STONE, LLC, has executed this Guaranty of

    Performance as of the _____19th_____ day of _MAY_ 2006

                          FC STONE, LLC
                          PETER NESSLER
                          VICE PRESIDENT, RENEWABLE FUELS

## EXHIBIT A

### Ethanol

Eco shall purchase 100% of the production of ethanol of CASCADE GRAIN's Facility on the following terms:

1. Eco will pay Thursday of each week for the shipments made by Friday of the previous week upon receipt of Invoice, Bill of Lading, Return Bill Of Lading, and Certificate Of Analysis.

2. CASCADE GRAIN is responsible for any and all of its local, state and federal tax liabilities and Eco is responsible for all of its local, state and federal tax liabilities.

3. Eco will provide scheduling and marketing for ethanol produced.

4. Eco will be responsible for receivables risk on ethanol for sales to third parties.

5. Eco reserves the right to refuse business to anyone due to credit and market risk.

6. CASCADE GRAIN shall meet or exceed the ASTM D4806-04 specification for denatured fuel ethanol as well as any changes in fuel ethanol industry standards made by ASTM International that might occur after the execution of this agreement.

7. CASCADE GRAIN will keep Eco informed on production forecasts, as well as daily plant inventory balances.

8. On all shipments, truck, rail, or barge title and risk of loss of the ethanol will pass at the loading flange. In all cases Eco is purchasing the ethanol on a FOB plant basis.

9. CASCADE GRAIN will provide a minimum of 10 days storage on the CASCADE GRAIN site.

10. CASCADE GRAIN must have meters that measure both gross and net 60 degrees Fahrenheit temperature corrected gallons.

11. Eco shall deduct all government tariffs or assessment fees, sales taxes, import/export handling fees, assessments, and inspection fees, imposed upon Eco and any other cost that is approved in writing by the Cascade Grain Representative



13

**EXHIBIT B**

### Eco Transportation Services

1.  Eco and CASCADE GRAIN will mutually agree as to the number of railcars and barges needed and their respective lease rates. The leases of such railcars and barges shall be in the name of Eco, but shall only be entered into by Eco with the prior written consent of Cascade Grain.

2.  All railcar and barge lease charges will be passed through from Eco to CASCADE GRAIN upon receipt of invoice from the leasing company.

3.  Upon CASCADE GRAIN's receipt of invoice from Eco the amount of the invoice will be subtracted from Eco's next Thursday payment to CASCADE GRAIN for ethanol purchases unless otherwise communicated by CASCADE GRAIN that the amount of the invoice will be remitted by wire transfer within five (5) business days from invoice date.

4.  Eco shall ensure that all rail and barge leases are assigned to Cascade Grain simultaneous with the termination of this Agreement and, if this agreement is terminated for any reason, CASCADE GRAIN will be responsible to take over all such rail and barge leases.

5.  Eco will negotiate rail and barge rates on behalf of Cascade Grain, however Cascade Grain shall approve each rail and barge contract in its sole discretion and no rail or barge contract negotiated by Eco shall bind Cascade Grain until Cascade Grain executes and delivers such contract to Eco and the counterparty.

6.  All rail transport contracts will be in the name of CASCADE GRAIN, or any name later chosen in the alternative.

7.  CASCADE GRAIN will invoice Eco for rail and/or barge freight along with a copy of the actual railroad and/or barge invoice. (This amount will be paid the following Thursday upon receipt of invoice.)

8.  Eco Energy will be responsible for supplying the denaturant, (low sulfur natural gasoline meeting the requirements of California, Oregon, Washington and any other state in which Cascade Grain's ethanol is marketed, and meeting the ASTM D4806-04 specification as such specification may be modified or amended) to CASCADE GRAIN.

9.  Eco will supply all trucks (at no cost to CASCADE GRAIN with respect to all FOB plant purchases), which shall be used for no more than 10% of the ethanol shipments from the plant.



## EXHIBIT C

Cascade Grain FEPO 00-00-06-
ECO-ENERGY, INC.
FIXED ETHANOL PURCHASE ORDER

Dated:

Eco-Energy, Inc. ("EEI") hereby submits this Fixed Ethanol Purchase Order to Cascade Grain Products, LLC ("CGP") pursuant to that certain Ethanol Marketing Contract between EEI and CGP dated as of (as the same may be amended, the "Agreement").

Aggregate Gallons of Ethanol:  + or – _____

Pick Up Dates for Ethanol Pick up: _____        _____

Other:

Minimum Purchase Price for Ethanol: $ _____ / Gal. FOB Clatskanie, OR (Less 1 cent marketing fee   $       /
GL)

Time Period for Acceptance of this Purchase Order (the "Acceptance Period"):  **Verbally Accepted by**
**(Please sign)**

This Purchase Order is irrevocable for the Acceptance Period and shall terminate upon the expiration of the Acceptance Period. EEI does not, however, have a binding obligation to purchase any ethanol pursuant to this Purchase Order unless and until EEI enters into an agreement with a third party for the sale of the ethanol by EEI to such third party.

This Purchase Order is subject to acceptance by CGP as provided in the Agreement and is otherwise tendered and made subject to and upon all of the terms and conditions of the Agreement.

ECO-ENERGY, INC.

By:
Name: Larry Beckwith
Title: President
Date:
E-Mail Address:  larryb@eco-energyinc.com

## ACCEPTANCE OR REJECTION

This Purchase Order is accepted/rejected (strike out and initial the one that does not apply) by CGP, subject to and upon all of the terms and conditions of the Agreement.

Cascade Grain Products

12

By: _____
Name: _____
Title: _____
Date: _____, 20___

## EXHIBIT D

### Cascade Grain  PPPO 03-14-06-1
ECO-ENERGY, INC.
POSTED PRICE ETHANOL PURCHASE ORDER

Dated:

### PART 1 -- Solicitation

Eco-Energy, Inc. ("EEI") hereby submits this Posted Price Ethanol Purchase Order to Cascade Grain Products, LLC ("CGP") pursuant to that certain Ethanol Marketing Contract between EEI and CGP dated as of _____ (as the same may be amended, the "Agreement").

1.       Maximum Aggregate Gallons of Ethanol:  **up to –** or _____

Other:

2.       Minimum Purchase Price for the Ethanol (the "Posted Price"): $_____ per GL - FOB Clatskanie, OR. **(Less marketing fee)**

3        Time Period Over Which the Posted Price Will Be Effective (the "Posted Price Sales Period"): Through _____

The offer contained herein shall expire at noon pacific standard time on the day that is one business day after the date hereof, as set forth in Section 6(b) of the Agreement.

ECO-ENERGY, INC.

By: _____
Name: Larry Beckwith
Title: President
Date:
E-mail Address: larryb@eco-energyinc.com

Cascade Grain Products, LLC

By: _____
Name: _____
Title: _____
Date: _____, 20___

### PART 2 – Commitment to Sell

1.       Maximum Aggregate Gallons of Ethanol:  **up to –** or _____

Other:

13

2.    Minimum Purchase Price for the Ethanol (the "Posted Price"): $_____ per GL - FOB Clatskanie, OR
(Less marketing fee)

3.    Time Period Over Which the Posted Price Will Be Effective (the "Posted Price Sales Period"):
Through  _____

4.    Time Period for Acceptance of this Purchase Order (the "Acceptance Period"):

_____  _____

This Purchase Order is irrevocable for the Acceptance Period and shall terminate upon the expiration of the
Acceptance Period. EEI does not, however, have a binding obligation to purchase any ethanol pursuant to this
Purchase Order unless and until EEI enters into an agreement with a third party for the sale of the ethanol by EEI to
such third party during, and for pick-up by EEI during, the Posted Price Sales Period.
This Purchase Order is subject to acceptance by CGP as provided in the Agreement and is otherwise tendered and
made subject to and upon all of the terms and conditions of the Agreement.

ECO-ENERGY, INC.

By: _____
Name: Larry Beckwith
Title: President
Date:
E-mail Address: larryb@eco-energyinc.com

ACCEPTANCE OR REJECTION
       This Purchase Order is accepted/rejected (strike out and initial the one that does not apply) by CGP, subject
to and upon all of the terms and conditions of the Agreement.

Cascade Grain Products, LLC

By: _____      _____
Name: ____      _____
Title: ____      _____
Date: _____      _____, 20____

14



Eco-Energy Inc.
725 Cool Springs Blvd
Suite 500
Franklin TN 37067

## PURCHASE CONTRACT

| To: | Cascade Grain Products, LLC<br>8513 NE Hazel Dell Ave<br>Suite 201<br>Vancouver WA | Negotiated Date: August 28, 2008 | |
|---|---|---|---|
| | | Agreement: | Cascade Grain Products - EcoRF, Purchase, 63103 |
| | | Contract No: | CASP082808-2 |

| Seller Contact | Buyer Contact |
|---|---|
| Cascade Grain Products, LLC | Eco-Energy Inc. |
| Dan McElligott - Marketer | Josh Bailey - Marketer |
| Phone: (360)574-6958 Fax: (360)574-6953 | Phone: (615)778-2898 Fax: (615)778-2897 |

Cascade Grain Products, LLC (Seller) agrees to sell and deliver, and Eco-Energy Inc. (Buyer) agrees to purchase and accept as per the following:

| PRODUCT: | Ethanol - Denatured |
|---|---|
| **TOTAL CONTRACT QUANTITY:** | 3,780,000 to 5,040,000 U.S. Gallons |
| **CONTRACT TERM:** | October 01, 2008 to December 31, 2008 |
| **PAYMENT TERMS:** | Friday following week of shipment |

| QUANTITY: | 3,780,000 to 5,040,000 U.S. Gallons Approximately |
|---|---|
| DELIVERY POINT: | FOB Clatskanie-Cascade Grain-Clatskanie, OR |
| DELIVERY MODE: | Barge |

CONDITIONS:

The price shall be the OPIS Los Angeles spot ethanol midpoint monthly average MINUS 5.75 CPG FOB Clatskanie, OR.  For PROVISIONAL BILLING purposes, the OPIS Los Angeles spot ethanol midpoint monthly average for the prior month average MINUS 5.75 CPG shall be used. Reconciliation and settlement shall occur by the 10th of the following month.

Vessel free time shall be calculated using 3000 barrels per hour load rate per the nominated volume (i.e. 10 hours free for a 30,000 barrel nomination). Time to commence upon tender of NOR or vessel arrival at load port and end upon release of vessel.  Demurrage rates shall be $650.00 per hour.

An independent inspector shall perform a quality and quantity inspection at load port.  Cascade Grain shall pay fifty percent of the independent inspector fees.

Contract quantity shall be based on Shore Tank volumes as determined by independent inspector. Dockage and Wharfage Fees: for Cascade Grain's account at load port.

Picked up in one vessel per month between 10/1/08-12/31/08.

---

SPECIAL TERMS:

| Quality | This product shall meet the following specifications: ASTM 4806-07, as well as, other current industry standards. This includes, but is not limited to, the Magellan specifications for E Grade Denatured Fuel Ethanol.  Volume to be based on Net Gallons temperature corrected to 60 degrees Fahrenheit. |
|---|---|
| Freight | Seller to prepay freight and send freight bills to Buyer for reimbursement. |

© CopyRight 2000 Entero Corporation

Printed on 9/2/2008 14:11:15

Exhibit 2
Page 1 of 4

PURCHASE CONTRACT                          Contract      63103-CASP082808-2

SPECIAL TERMS:

Freight Increases                   Seller will accept and incur any additional freight increases or decreases and applicable
                                    surcharges imposed by carrier.  Price per gallon will be adjusted to reflect the price
                                    increase or decrease.

General Terms and Conditions   All other terms and conditions not in conflict with the foregoing shall be in accordance with
                               the terms of the Ethanol Marketing Contract dated May 19, 2006.

GENERAL TERMS AND CONDITIONS:

THIS AGREEMENT IS CONSIDERED TO BE ACCEPTED UNLESS THE BUYER IS NOTIFIED OTHERWISE WITHIN 48 HOURS.

Accepted and Agreed to this day by:

Eco-Energy Inc.                                    Cascade Grain Products, LLC


Josh Bailey                                        Dan McElligott
Date:         8/28/08                              Date:      9/2/08

**Exhibit 2**
**Page 2 of 4**



Eco-Energy Inc.
725 Cool Springs Blvd
Suite 500
Franklin TN 37067

## AMENDED PURCHASE CONTRACT

To:  Cascade Grain Products, LLC
8513 NE Hazel Dell Ave
Suite 201
Vancouver WA

Negotiated Date: August 28, 2008

| Agreement: | Cascade Grain Products  - EcoRF, Purchase, 63103-AMENDED |
| Contract No: | CASP082808-2 |

Seller Contact
Cascade Grain Products, LLC
Dan McElligott - Marketer
Phone: (360)574-6958 Fax: (360)574-6953

Buyer Contact
Eco-Energy Inc.
Josh Bailey - Marketer
Phone: (615)778-2898 Fax: (615)778-2897

Cascade Grain Products, LLC (Seller) agrees to sell and deliver, and Eco-Energy Inc. (Buyer) agrees to purchase and accept as per the following:

| PRODUCT: | Ethanol - Denatured |
| TOTAL CONTRACT QUANTITY: | 3,780,000 U.S. Gallons |
| CONTRACT TERM: | October 01, 2008 to December 31, 2008 |
| PAYMENT TERMS: | Friday following week of shipment |

| QUANTITY: | 3,780,000 U.S. Gallons Approximately |
| DELIVERY POINT: | FOB Clatskanie-Cascade Grain-Clatskanie, OR |
| DELIVERY MODE: | Barge |

| DELIVERY POINT: | FOB Clatskanie-Cascade Grain-Clatskanie, OR |
| DELIVERY MODE: | Truck |

CONDITIONS:    The price shall be the OPIS Los Angeles spot ethanol midpoint monthly average MINUS 5.75 CPG FOB Clatskanie, OR. For PROVISIONAL BILLING purposes, the OPIS Los Angeles spot ethanol midpoint monthly average for the prior month average MINUS 5.75 CPG shall be used. Reconciliation and settlement shall occur by the 10th of the following month.

Vessel free time shall be calculated using 3000 barrels per hour load rate per the nominated volume (i.e. 10 hours free for a 30,000 barrel nomination). Time to commence upon tender of NOR or vessel arrival at load port and end upon release of vessel. Demurrage rates shall be $650.00 per hour.

An independent inspector shall perform a quality and quantity inspection at load port. Cascade Grain shall pay fifty percent of the independent inspector fees.

Contract quantity shall be based on Shore Tank volumes as determined by independent inspector. Dockage and Wharfage Fees: for Cascade Grain's account at load port.

Picked up in one vessel per month between 10/1/08-12/31/08.

AMENDMENT 12/1/08: Amending to add truck delivery option. December volume shall be delivered as follows:

20,000 Barrels/Barge.  PRICED @
10,000 Barrels/Truck.  → @  NOVEMBER  MIDPOINT  MONTHLY

All other terms and conditions shall remain the same.

**Exhibit 2**
**Page 3 of 4**

AMENDED PURCHASE CONTRACT                    Contract     63103-CASP082808-2

SPECIAL TERMS:

Quality                     This product shall meet the following specifications. ASTM 4806-07, as well as, other
                            current industry standards. This includes, but is not limited to, the Magellan specifications
                            for E Grade Denatured Fuel Ethanol. Volume to be based on Net Gallons temperature
                            corrected to 60 degrees Fahrenheit.

Freight                     Seller to prepay freight and send freight bills to Buyer for reimbursement.

Freight Increases           Seller will accept and incur any additional freight increases or decreases and applicable
                            surcharges imposed by carrier. Price per gallon will be adjusted to reflect the price
                            increase or decrease.

General Terms and Conditions  All other terms and conditions not in conflict with the foregoing shall be in accordance with
                            the terms of the Ethanol Marketing Contract dated May 19, 2006.

GENERAL TERMS AND CONDITIONS:

THIS AGREEMENT IS CONSIDERED TO BE ACCEPTED UNLESS THE BUYER IS NOTIFIED OTHERWISE WITHIN 48 HOURS.

Accepted and Agreed to this day by:

Eco-Energy Inc.                                   Cascade Grain Products, LLC

_FOR JOSH BAILEY_

Josh Bailey                                       Dan McElligott
Date: 12/01/2008                                  Date: 12/10/08

Exhibit 2
Page 4 of 4