Donald J. Verfurth  OSB #066480
dverfurth@gordonrees.com
Ryan G. Foltz, *Admitted Pro Hac vice*
rfoltz@gordonrees.com
Gordon & Rees LLP
701 5th Avenue, Suite 2100
Seattle, WA  98104
Phone: (206) 695-5100
Fax: (206) 689-2822

Attorneys for Plaintiff

Wm. Kelly Olson, OSB No. 742393
Email: kolson@mls-law.com
Scott Meyer, OSB No. 814620
Email: smeyer@mls-law.com
Mitchell, Lang & Smith
2000 One Main Place
101 S.W. Main Street
Portland, Oregon 97204-3230
Phone: (503) 221-1011
Fax: (503) 248-0732

Attorneys for Defendant Cascade Grain Products, LLC

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **ECO-ENERGY, INC.**, a Tennessee corporation,<br><br>             Plaintiff(s),<br><br>     v.<br><br>**CASCADE GRAIN PRODUCTS, LLC,** An Oregon limited liability company,<br><br>             Defendant(s). | Case No. 3:10-cv-01441-BR<br><br>**JOINT STATEMENT OF AGREED FACTS** |

Page  1 - JOINT STATEMENT OF AGREED FACTS

W:\NrPortbl\LEGAL\MCHE\11934354_1.DOC

MITCHELL, LANG & SMITH
ATTORNEYS AT LAW
2000 ONE MAIN PLACE
101 S.W. MAIN STREET
PORTLAND, OREGON 97204-3230
TELEPHONE (503) 221-1011
FAX (503) 248-0732

In accordance with the Case Management Order (Dkt. #76), Plaintiff Eco-Energy, Inc. ("Eco-Energy"), and Defendant Cascade Grain Products, LLC ("Cascade Grain"), hereby submit the following Agreed Statement of Facts.

1. Plaintiff, Eco-Energy, Inc. ("Eco-Energy") is, and at all material times, was a corporation organized and existing under the laws of the state of Tennessee, with its principal place of business in Franklin, Tennessee. Eco-Energy is the subrogor of American International Specialty Lines Insurance Company ("AISLIC") regarding the claims asserted in this action. Eco-Energy has satisfied all prerequisites for filing and maintenance of this lawsuit.

2. AISLIC, now known as Chartis Specialty Lines Insurance Company is, and at all material times, was a corporation organized and existing under the state of Alaska with its principal place of business in New York and authorized to transact insurance in the state of Oregon. Chartis Specialty Lines Insurance Company is now an Illinois corporation with its principal place of business in New York. Chartis Specialty Lines Insurance Company has satisfied all prerequisites for the filing and maintenance of this lawsuit.

3. Cascade Grain Products, LLC ("Cascade Grain") is, and at all material times, was an Oregon limited liability company with its principal place of business in Clatskanie, Oregon. At all times herein mentioned Cascade Grain was a supplier of ethanol to Eco-Energy.

4. Eco-Energy was insured against loss or damage under AISLIC Commercial General Liability and Pollution Legal Liability Policy No. 089595, with a policy period of December 2, 2008 to December 2, 2009; and AISLIC Commercial Umbrella Police No. EGU3103456, with a policy period of December 2, 2008 to December 2, 2009.

*5. On May 19, 2006, Cascade Grain and Eco-Energy entered into an exclusive Ethanol Marketing Contract ("the Marketing Contract").

Page 2 - JOINT STATEMENT OF AGREED FACTS

W:\NrPortbl\LEGAL\MCHE\11934354_1.DOC

MITCHELL, LANG & SMITH
ATTORNEYS AT LAW
2000 ONE MAIN PLACE
101 S.W. MAIN STREET
PORTLAND, OREGON 97204-3230
TELEPHONE (503) 221-1011
FAX (503) 248-0732

*6. Under the terms of the Marketing Contract, Eco-Energy agreed to purchase the entire output of ethanol from Cascade Grain's Clatskanie ethanol plant ("the Facility").

*7. Cascade Grain agreed that the ethanol sold to Eco-Energy "shall be consistent with the provisions of Exhibit A" of the Marketing Contract.

*8. Exhibit A to the Marketing Contract provides in pertinent part as follows:

> Eco shall purchase 100% of the production of ethanol of CASCADE GRAIN's Facility on the following terms:
>
> \*   \*   \*
>
> 6.   CASCADE GRAIN shall meet or exceed the ASTM D4806-04 specification for denatured fuel ethanol as well as any changes in fuel ethanol industry standards made by ASTM International that might occur after the execution of this agreement.

*9. The Marketing Contract may be terminated by Eco-Energy by written notice in the event of breach by Cascade Grain of any material term of the Marketing Contract, which shall be effective fifteen (15) days after it is delivered unless Cascade Grain cures the breach within such time.

*10. The parties to the Marketing Contract agreed to "indemnify, defend and hold the other harmless from claims, demands and causes of action asserted against the other by any person … for loss of or damage to property resulting from the willful or negligent acts or omissions of the indemnifying party."

*11. Cascade Grain was required to name Eco-Energy as an additional insured on Cascade Grain's Commercial General Liability policy and agreed to maintain such insurance throughout the term of the Marketing Agreement.

12. Cascade Grain's Facility commenced ethanol production in June 2008.

Page 3 - JOINT STATEMENT OF AGREED FACTS

W:\NrPortbl\LEGAL\MCHE\11934354_1.DOC

MITCHELL, LANG & SMITH
ATTORNEYS AT LAW
2000 ONE MAIN PLACE
101 S.W. MAIN STREET
PORTLAND, OREGON 97204-3230
TELEPHONE (503) 221-1011
FAX (503) 248-0732

13. In December 2008, Eco-Energy purchased 20,000 barrels of ethanol from Cascade Grain. The ethanol was produced at Cascade Grain's Facility. Eco-Energy resold the ethanol to Chevron and Conoco in Portland.

14. The ethanol was tested at Cascade's shore tanks and determined to be within the ASTM specification for sulfates (less than 4 ppm).

15. Cascade Grain did not test for sulfates on-site. Samples were sent to an off-site lab for testing.

16. From December 10 through December 11, 2008, the barge *New Dawn* received 20,000 barrels of fuel ethanol from the Cascade Grain Facility (Tank 6106). The *New Dawn* delivered 10,000 barrels of fuel ethanol to Conoco at the Portland NuStar Terminal (Tank 3201) and 10,000 barrels to Chevron Portland (Tank 51).

17. The 20,000 barrels delivered by the *New Dawn*, and loaded into Chevron and Conoco tanks, were comingled with approximately 53,000 barrels of industry compliant ("on-spec") ethanol. The ethanol contaminated Chevron and Conoco's existing inventory of ethanol. Ultimately, all the ethanol in the tanks tested high for sulfate.

18. On December 18, 2008, Conoco requested sulfate testing of the contents of Tank 3201. Chevron also requested testing for sulfates on the contents of Tank 51. In both cases, testing by Inspectorate revealed that the contents of each tank contained sulfates in excess of industry specifications ("off-spec").

19. Off–spec for pHe and sulfate is described in ASTM D 4806. Fuel ethanol pHe should be between 6.5 and 9, and sulfate less than 4 mg/kg.

20. On December 19, additional testing was performed by Inspectorate and Caleb Brett on retained samples and new samples. These sulfate tests revealed Tank 6106 at the Cascade

Page  4 - JOINT STATEMENT OF AGREED FACTS

W:\NrPortbl\LEGAL\MCHE\11934354_1.DOC

MITCHELL, LANG & SMITH
ATTORNEYS AT LAW
2000 ONE MAIN PLACE
101 S.W. MAIN STREET
PORTLAND, OREGON 97204-3230
TELEPHONE (503) 221-1011
FAX (503) 248-0732

Grain plant, the Cascade dock line, the *New Dawn*, and some rail cars loaded at Cascade Grain were also off-spec with respect to sulfate.

\*21. Testing of fuel ethanol on January 8, 2009, in Western Biofuels rail cars at the Cascade facility by Inspectorate revealed that fuel ethanol in the rail cars was off-spec with respect to pHe.

22. Inspectorate continued testing samples from Cascade Tank 6106 and found the source of off-spec sulfate was sodium bisulfite. Cascade Grain acknowledged the use of sodium bisulfate in its production process.

23. The testing for sulfates in fuel ethanol performed by Inspectorate and Caleb Brett was reproducible.

24. Farallon Consulting conducted a third-party testing of fuel ethanol from Cascade Grain in Chevron Tank 51 and Conoco Tank 3201. Samples were collected on February 23, 2009, and sent to Gorge Analytical for pHe and sulfate determination. The results indicated that the contents of both tanks was off-spec with respect to pHe and sulfate.

25. The new sampling conducted by Farallon in February 2009, confirmed that the fuel ethanol was off-spec, and demonstrated that sulfate in Tanks 51 and 3201 were higher than earlier testing. These results indicated sulfate levels were still increasing.

26. The testing of the ethanol delivered by Cascade Grain shows the fuel ethanol was unstable, rendering the composition of fuel ethanol with respect to sulfate unpredictable.

\*27. Cascade Grain filed for Chapter 11 bankruptcy in January 2009.

28. Cascade Grain's plant was shutdown in January 2009. The plant was briefly brought back on line in February 2010 to complete a cold (complete) shutdown of the plant.

29. Cascade Grain did not produce any ethanol after it shutdown in early 2009.

Page 5 - JOINT STATEMENT OF AGREED FACTS

MITCHELL, LANG & SMITH
ATTORNEYS AT LAW
2000 ONE MAIN PLACE
101 S.W. MAIN STREET
PORTLAND, OREGON 97204-3230
TELEPHONE (503) 221-1011
FAX (503) 248-0732

W:\NrPortbl\LEGAL\MCHE\11934354_1.DOC

*30. On January 23, 2009, Eco-Energy wrote to Cascade Grain to notify Cascade Grain that it had violated Sections 8(a), 11, 12 and Exhibit A Items 6 and 7 of the Marketing Contract.

31. Cascade Grain accepted 20,000 barrels of off-spec ethanol.

32. Chevron and Conoco demanded that Eco-Energy purchase the remaining contaminated approximately 53,000 barrels by mid-February 2009, which Eco-Energy did, at a price of $3,877,527.

33. Various methods were considered by Eco-Energy, AISLIC, and Cascade Grain to treat the off-spec ethanol.

34. Cascade Grain offered to take possession of the approximately 53,000 barrels of high sulfate ethanol from Chevron and Conoco, filter it to remove the sulfates, and return it to Eco-Energy. Cascade Grain would not reimburse Eco-Energy for the amount it paid to Chevron or Conoco for the off-spec ethanol. Eco-Energy declined this offer, deciding instead to ship the ethanol to the Gulf Coast for sale.

35. On or about February 18, 2009, Eco-Energy transported the approximately 53,000 barrels of off-spec ethanol through the Panama Canal to the Gulf Coast of the United States.

36. Eco-Energy paid freight charges to transport the off-spec ethanol to the Gulf Coast in the amount of $2,008,991.

37. In March 2009, Cascade Grain purchased equipment to implement a clay filtering process patented by Conoco; installed the equipment at its Facility in April 2009.

38. On March 31, 2009, Eco-Energy sold the off-spec ethanol to Chemium International in Houston, Texas, at a price of $1,953,940 (90.5 cents per gallon).

39. Ultimately, Cascade Grain filtered the 20,000 barrels it previously accepted. Cascade Grain also took back high sulfate ethanol from other buyers, successfully filtered it and

Page 6 - JOINT STATEMENT OF AGREED FACTS

W:\NrPortbl\LEGAL\MCHE\11934354_1.DOC

MITCHELL, LANG & SMITH
ATTORNEYS AT LAW
2000 ONE MAIN PLACE
101 S.W. MAIN STREET
PORTLAND, OREGON 97204-3230
TELEPHONE (503) 221-1011
FAX (503) 248-0732

returned it in the summer of 2009. Cascade Grain also filtered some of it's own high sulfate ethanol. The filtering was successful and the resulting ethanol was within the ASTM specification for sulfate. Cascade Grain filtered approximately 77,000 barrels of high-sulfate ethanol at a cost of 7.1 cents per gallon, plus transportation costs of 6.5 cents per gallon. Of these 77,000 barrels, some was returned to other buyers and the rest (approximately 56,000 barrels) was sold on the open market for an average sales price of $1.30.

40. AISLIC paid Eco-Energy $4,149,033.20 for damages arising out of legal liability pursuant to the terms of the AISLIC policies.

*Denotes Defendant Cascade Grain disputes the relevance of the facts stated.

Respectfully submitted this 9th day of March, 2012.

By:    /s/ Scott Meyer
Scott Meyer, OSB No. 814620
(503) 221-1011
Attorney for Defendant Cascade Grain


By:    /s/ Ryan G. Foltz
Donald J. Verfurth, OSB #066480
Ryan G. Foltz, *Admitted Pro Hac Vice*
(206) 695-5100
Attorneys for Plaintiff

Page 7 - JOINT STATEMENT OF AGREED FACTS

MITCHELL, LANG & SMITH
ATTORNEYS AT LAW
2000 ONE MAIN PLACE
101 S.W. MAIN STREET
PORTLAND, OREGON 97204-3230
TELEPHONE (503) 221-1011
FAX (503) 248-0732

W:\NrPortbl\LEGAL\MCHE\11934354_1.DOC

## CERTIFICATE OF SERVICE

      I hereby certify that on March 9, 2012, I served a copy of the foregoing via the CM/ECF filing system on the following parties:

Wm. Kelly Olson
Scott Meyer
Mitchell Lang & Smith
2000 One Main Place
101 SW Main Street
Portland, OR  97204-3230
Tel.:   (503) 221-1011
**Attorneys for Plaintiff Cascade Grain Products, LLC**

                                              */s/ Ryan G. Foltz*
                                  Donald J. Verfurth  OSB #066480
                                  Ryan G. Foltz, Admitted Pro Hac Vice
                                  (206) 695-5100
                                  Attorneys For: Plaintiff
                                  Gordon & Rees LLP
                                  701 Fifth Avenue, Floor 2100
                                  Seattle, WA  98104
                                  Phone:(206) 262-7521
                                  Facsimile: (206) 262-8001

Page  8 - JOINT STATEMENT OF AGREED FACTS

AIG/1056317/11934354v.1

W:\NrPortbl\LEGAL\MCHE\11934354_1.DOC

MITCHELL, LANG & SMITH
ATTORNEYS AT LAW
2000 ONE MAIN PLACE
101 S.W. MAIN STREET
PORTLAND, OREGON 97204-3230
TELEPHONE (503) 221-1011
FAX (503) 248-0732